UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

April 4, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:  *Sara M. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
     Civil No. 23-888-CDA

Dear Counsel:

On March 31, 2023, Plaintiff Sara M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to a magistrate judge with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). The Court has considered the record in this case (ECF 8) and the parties' briefs (ECFs 13, 15, 18). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the SSA's decision if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the Court will REVERSE the SSA's decision and REMAND the case to the SSA for further consideration. This letter explains why.

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") on November 3, 2020, alleging a disability onset of December 30, 2017. Tr. 165–66, 233. Plaintiff's claim was denied initially and on reconsideration. Tr. 91–94, 96–101. On July 6, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 33–50. Following the hearing, on July 27, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 12–32. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on March 31, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, Commissioner O'Malley has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ found that Plaintiff "did not engage in substantial gainful activity . . . from her alleged onset date . . . through her date last insured[.]" Tr. 18. At step two, the ALJ found that Plaintiff had severe "morbid obesity" during the relevant period. *Id*. The ALJ also found that Plaintiff had non-severe "toenail fungus," "hypertension," "rheumatoid arthritis (RA)/psoriatic arthritis/fibromyalgia," "degenerative disk disease," and "bronchitis" during this period. *Id.* At step three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" through the date on which she was last insured. Tr. 19. The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and she is further limited to occasionally climbing ramps and stairs, never climbing ladders, ropes or scaffolds, occasional balancing, stooping, kneeling, crouching, and crawling. She can have no exposure to hazards, such as unprotected heights and dangerous machinery.

*Id.* The ALJ determined that Plaintiff could not perform any of her past relevant work but could perform other jobs that existed in significant numbers in the national economy. Tr. 26–27. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 27.

### III.   LEGAL STANDARD

The Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court considers whether the ALJ analyzed the relevant evidence and sufficiently explained their decision. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

IV. **ANALYSIS**

Plaintiff argues that the ALJ's evaluation of fibromyalgia "fails to comport with *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020)." ECF 13, at 7. Specifically, Plaintiff contends that "the ALJ erred . . . by impermissibly discarding Plaintiff's statements concerning . . . her pain and fatigue symptoms by relying on objective evidence[.]" *Id.* at 9. Defendant counters that "[t]he ALJ did not indicate . . . that Plaintiff's *fibromyalgia* was unsubstantiated by the objective evidence" but instead "found [fibromyalgia to be] non severe because, during the relevant period, Plaintiff did not complain of any fibromyalgia-related issues and received minimal to no treatment for the condition." ECF 15, at 9 (emphasis in original).

An ALJ may not "rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas*, 983 F.3d at 97. In *Arakas*, an ALJ "discredited [a claimant's] statements about the severity, persistence, and limiting effects" of her fibromyalgia symptoms "because [the ALJ] did not find [the symptoms] to be 'completely consistent with the objective evidence.'" *Id.* at 96. Because the claimant "was 'entitled to rely exclusively on subjective evidence to prove' that her symptoms were 'so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,'" the Fourth Circuit held that the ALJ "applied an incorrect legal standard" by discrediting the claimant's complaints "based on the lack of objective evidence corroborating them." *Id.* (brackets in original). The court further concluded that the ALJ "'improperly increased [the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.*

Governed by the standard articulated in *Arakas*, the Court agrees with Plaintiff that the ALJ's evaluation of Plaintiff's fibromyalgia warrants remand. At step two, the ALJ determined that Plaintiff suffered from fibromyalgia but found the impairment to be non-severe because Plaintiff sought "minimal to no medical care during the period at issue[.]" Tr. 18. The ALJ made only one other explicit reference to fibromyalgia in their decision:

> The claimant's allegations are not supported by the objective medical evidence or treatment record. There is no objective medical evidence during the period at issue. The claimant's treatment regimen is also not consistent. [She] did not have treatment after the prior ALJ decision in February 2015 except for a breast examination in 2017, and for bronchitis and toenail fungus in 2016, during which she had morbid obesity, and then no treatment until March 2018 for bronchitis. She did not complain about her rheumatoid arthritis concerns until September 2018. While she testified that she did not have a specialist to treat her for her rheumatoid arthritis/psoriatic arthritis/fibromyalgia because she could not find one and because she lost her health insurance mid-2017, she also testified that she saw her primary care provider for these problems. However, [when] she saw her primary care provider in [2016, 2017, and 2018], [she] did not complain about these issues.

Tr. 24.

Sara M. v. O'Malley
Civil No. 23-888-CDA
April 4, 2024
Page 4

The ALJ committed reversible error by determining that Plaintiff's allegations were unsupported by objective evidence. "[T]rigger points," which *Arakas* defines as "tenderness in specific sites on the body," are "the only 'objective' signs of fibromyalgia." *Arakas*, 983 F.3d at 97. Apart from trigger-point evidence, objective evidence has "no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." *Id.* An ALJ therefore errs by discrediting a claimant's fibromyalgia symptoms based upon a lack of objective evidence to corroborate the symptoms. *See id.* at 98. If an ALJ *does* consider objective evidence in relation to fibromyalgia, that evidence "should be treated as evidence *substantiating*" a claimant's fibromyalgia symptoms. *Id.* at 97–98 (emphasis in original).

Notably, the ALJ in this case found that Plaintiff had other medically determinable impairments which, unlike fibromyalgia, may produce objective evidence of their effects. *See* Tr. 18 (determining that Plaintiff suffered from morbid obesity, toenail fungus, hypertension, rheumatoid arthritis, psoriatic arthritis, and degenerative disk disease). But, when determining that objective evidence failed to substantiate Plaintiff's alleged symptoms, the ALJ drew no explicit distinction between Plaintiff's fibromyalgia-related allegations[3] and her allegations concerning other impairments. *See* Tr. 24. This lack of precision leaves the Court unable to determine whether the ALJ contravened *Arakas* in assessing Plaintiff's symptoms. Remand for a clearer analysis is therefore warranted. *See Richard B. v. Kijakazi*, No. BAH-22-3193, 2023 WL 5938763, at *3 n.5 (D. Md. Sept. 12, 2023) (remanding where the ALJ "discussed objective findings within the same paragraph referencing Plaintiff's fibromyalgia," which left the Court unable to "infer that the ALJ's discussion . . . was intended to pertain to a different impairment that does produce objective evidence").

Further frustrating the Court's review is the ALJ's statement that "[t]here is no objective medical evidence during the period at issue." Tr. 24. Social Security Ruling ("SSR") 12-2p makes clear that objective evidence is necessary to establish that fibromyalgia is medically determinable at step two. *See* SSR 12-2p, 2012 WL 3104869, at *3 (July 25, 2012). Given that the ALJ found Plaintiff's fibromyalgia to medically determinable, *see* Tr. 18, it is unclear how the ALJ subsequently found that objective evidence of that impairment was lacking. Because an internal inconsistency in an ALJ's decision "frustrates meaningful review and requires remand," the Court finds that the incongruity between the ALJ's step-two conclusion and their symptom analysis warrants remand for further analysis. *Mallett v. Berryhill*, No. 5:18-CV-241-D, 2019 WL 2932776, at *4 (E.D.N.C. June 17), *report and recommendation adopted sub nom*. *Mallett v. Saul*, 2019 WL 2980032 (E.D.N.C. July 8, 2019).

In sum, remand is warranted because the ALJ's analysis with respect to Plaintiff's fibromyalgia was not "sufficiently articulated [so as] to permit meaningful judicial review." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). In remanding for further explanation,

---

[3] The Court disagrees with Defendant that Plaintiff "did not complain of any fibromyalgia-related issues" during the relevant period. ECF 15, at 9. On April 14, 2021, Plaintiff reported fibromyalgia-related symptoms that included musculoskeletal pain and fatigue. *See* Tr. 307.

*Sara M. v. O'Malley*
Civil No. 23-888-CDA
April 4, 2024
Page 5

the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

### V.     CONCLUSION

For the reasons set forth herein, the SSA's judgment is REVERSED due to inadequate analysis pursuant to sentence four of 42 U.S.C. § 405(g).  The case is REMANDED for further proceedings in accordance with this opinion.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge